AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

FILED
MAY 23 2011
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

EMC

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. 3 11 70565 |
| EDWARD FENG | ) | |
| Defendant(s) | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  June 2009 through March 25, 2011  in the county of  San Francisco  in the  Northern  District of  California , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 331(a),(k),(p) and 333 (a)(2) | Introduction into Interstate Commerce of Misbranded Drugs with the Intent to Defraud or Mislead, Dispensing of Prescription Drugs without a Valid Prescription, an Act Which Causes the Drug to be Misbranded While Held for Sale, With the Intent to Defraud or Mislead, Failure to Register as a Drug Manufacturer. |

This criminal complaint is based on these facts:

See Affidavit of SA Hilary Rickher, attached hereto and fully incorporated herein by reference.

☑ Continued on the attached sheet.

_____
AUSA Kirstin M. Ault

_____
Complainant's signature

SA HILARY RICKHER
Printed name and title

Sworn to before me and signed in my presence.

Date: 5·23·2011

_____
Judge's signature
JACQUELINE SCOTT CORLEY
EDWARD M. CHEN, U.S. MAGISTRATE JUDGE
Printed name and title

City and state:  SAN FRANCISCO, CALIFORNIA



**AFFIDAVIT OF SPECIAL AGENT HILARY RICKHER IN SUPPORT OF APPLICATION FOR SEARCH WARRANT AND COMPLAINT**

I, Hilary Rickher, being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION

1. This affidavit is submitted in support of a request for the issuance of a search warrant for the business premises of China House Clinic (also known as Feng's Holistic Healing Center), a distributor of the adulterated drug Liu Shen Wan, that is owned and operated by Edward FENG. The location to be searched is **1314 Utah Street, San Francisco, California**, the business address of China House Clinic. The request for authorization to conduct a search at this location is based upon the development of facts which provide probable cause to believe that evidence, fruits, and instrumentalities of the following criminal violations will be located at this address:

   a. the distribution in interstate commerce of misbranded and adulterated drugs with the intent to defraud and mislead, in violation of 21 U.S.C. §§ 331(a) and 333(a)(2);

   b. the introduction and causing the introduction into interstate commerce of unapproved new drugs with the intent to defraud and mislead, in violation of 21 U.S.C. §§ 331(d) and 333(a)(2);

   c. the failure to register as a drug manufacturer, or to provide the required list of all drugs produced by a drug establishment, as required by 21 U.S.C. § 360 (21 U.S.C. § 331(p)); and

   d. the illegal distribution or dispensing of controlled substances, in violation

of 21 U.S.C. § 841.

2. Additionally, this affidavit is submitted in support of a criminal complaint against Edward FENG for Introduction into Interstate Commerce of Misbranded Drugs with the Intent to Defraud and Mislead, in violation of 21 U.S.C. §§ 331(a) and 333(a)(2); Dispensing Prescription Drugs without a Valid Prescription, an act which causes the drug to be Misbranded While Held for Sale After Shipment in Interstate Commerce, all with the Intent to Defraud or Mislead, in violation of 21 U.S.C. §§ 331(k) and 333(a)(2); and Failure to Register as a Drug Manufacturer, in violation of 21 U.S.C. § 331(p).

3. The facts detailed in this affidavit provide probable cause to believe that FENG and the China House Clinic illegally caused to be distributed in interstate commerce, via commercial interstate carrier, products that were in fact unapproved new drugs. Thus, the products are manufactured, imported, offered for sale, sold and shipped in interstate commerce in violation of the Federal Food, Drug and Cosmetic Act (FDCA).

4. There is probable cause to believe that the involvement of FENG and China House Clinic in the distribution and dispensing of this product violated numerous provisions of federal law concerning the interstate shipment of drugs, and the Controlled Substances Act, as described in Paragraphs 1 and 2 above.

5. The facts in this affidavit provide probable cause to believe that evidence of these violations will be found at **1314 Utah Street, San Francisco, California**, the business location of Edward FENG and China House Clinic.

## II. AFFIANT'S BACKGROUND

6. I am a Special Agent with the Food and Drug Administration, Office of Criminal

Investigation (FDA-OCI), presently assigned to the San Francisco Resident Office. I have been with FDA-OCI since September of 2010. Prior to my employment with FDA-OCI, I was a Postal Inspector with the United States Postal Inspection Service (USPIS), beginning in 2005. Prior to my employment with the USPIS, I was a Senior Patrol Agent with the United States Border Patrol, beginning in 2002. During my eight and a half years as a federal agent, I have conducted and/or participated in more than 50 criminal investigations involving violations of the mail fraud statute, drug distribution and importation violations, misbranding violations, mail theft violations and other federal financial crimes. In addition, I have received training and education regarding the investigation of violations of federal criminal law. Specifically, I successfully completed the FDA-OCI Special Agent Training course in Charleston, South Carolina, where I completed 120 hours of course work in FDA law and FDA-OCI investigations. I have participated in the execution of numerous search warrants and have written dozens of affidavits in support of search warrants.

7. Information contained in this affidavit is based upon my investigation, my personal observations, my training and experience, investigation by other officers and agents, and interviews of witnesses and victims.

### III. FOOD, DRUG, AND COSMETIC ACT STATUTES PERTINENT TO THIS AFFIDAVIT

**A. Laws Applicable to all Products Regulated under the federal Food, Drug and Cosmetic Act**

8. Under the federal Food, Drug and Cosmetic Act (hereinafter FDCA), the term "label" means a display of written, printed, or graphic matter upon the immediate container of any article. 21 U.S.C. § 321(k). The term "labeling" is broader, and is defined as all labels and

3

other printed or graphic matter upon any article or any of its containers or wrappers, or accompanying such article. 21 U.S.C. § 321(m).

9. The "intended use" of an article means the objective intent of the persons legally responsible for the labeling of that article. The intent is determined by such persons' expressions or may be shown by the circumstances surrounding the distribution of the article. This objective intent may, for example, be shown by labeling claims, advertising matter, or oral or written statements by such persons or their representatives. It may be shown by the circumstances that the article is, with the knowledge of such persons or their representatives, offered and used for a purpose for which it is neither labeled nor advertised. 21 C.F.R § 201.128.

10. The FDCA contains a number of prohibited acts carrying criminal penalties. Most of these prohibited acts are found in 21 U.S.C. § 331. All violations of 21 U.S.C. § 331 are strict liability, Class A Misdemeanors, and carry a possible penalty of up to one year in prison and a maximum fine of $250,000 for individuals and $500,000 for corporations. 21 U.S.C. § 333(a)(1). If committed with the intent to defraud or mislead consumers, regulatory agencies, or law enforcement, violations of 21 U.S.C. § 331 are felonies, carrying the possibility of three years imprisonment and/or fines of $250,000 per individual or $500,000 per organization. 21 U.S.C. § 333(a)(2). For either, a sentencing court can alternatively fine twice the gross gain or loss derived from the offense. 21 U.S.C. § 333(a); 18 U.S.C. §§ 3559(a)(6) and 3571.

**B. The Regulation of Drugs under the FDCA**

11. Under the FDCA, "drugs" are defined as, among other things, articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals, and articles (other than food) intended to affect the structure or function of the body of man. 21

U.S.C. § 321(g)(1)(B) & (C). Foods, including dietary supplements, may make substantiated claims regarding their effect on the structure or function of the body of man, but if they are intended for the diagnosis, cure, mitigation, treatment, or prevention of diseases, they are drugs, and must comply with the laws regulating drug manufacturing and distribution.

12. With limited exceptions not relevant to this case, a "new drug" is, among other things, any drug not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof. 21 U.S.C. § 321(p). With limited exceptions not relevant to this case, a "new drug" may not be lawfully introduced or delivered for introduction into interstate commerce unless an approval of that drug had been granted by FDA through the New Drug Application (NDA) process. 21 U.S.C. § 355(a).

13. Every individual upon first engaging in the manufacture, preparation, compounding, or processing of drugs in any establishment which that individual owns or operates is required to immediately register his or her name, places of business, and all such establishments. 21 U.S.C. § 360(c). The terms "manufacture, preparation, propagation, compounding, or processing" include repackaging or otherwise changing the container, wrapper, or labeling of any drug in furtherance of the distribution of the drug from the original place of manufacture to the person who makes the final sale to the ultimate consumer or user. 21 U.S.C. § 360(a)(1).

14. A drug is misbranded if, among other things:

    a. its labeling is false or misleading in any particular (21 U.S.C. § 352(a));

      b.      the drug is in package form and does not bear a label containing the name and place of business of the manufacturer, packer, or distributor (21 U.S.C. § 352(b)); or

      c.      the drug is manufactured, prepared, propagated, compounded, or processed in an establishment in any State not duly registered with FDA, or if it is not included in a list of drugs manufactured by a facility registered with FDA (21 U.S.C. § 352(o)).

15.    A drug is also misbranded if the labeling on the drug does not bear adequate directions for use (21 U.S.C. § 352(f)(1)). "Adequate directions for use" is defined as directions under which a layman can use a drug or device safely for the purposes for which it is intended without a doctor's supervision. 21 C.F.R. §§ 201.5 and 801.5. No directions for use whatsoever is *per se* inadequate.

16.    Regarding drugs, the doing or causing any of the following is prohibited under the FDCA:

      a.      the introduction or delivery for introduction into interstate commerce of a misbranded drug (21 U.S.C. § 331(a));

      b.      the introduction or delivery for introduction into interstate commerce of any new drug without the required approval (21 U.S.C. § 331(d));

      c.      the failure to register as a drug manufacturer, or to provide the required list of all drugs produced by a drug establishment, as required by 21 U.S.C. § 360 (21 U.S.C. § 331(p)).

17.    For purposes of the FDCA, "interstate commerce" means "commerce between any

State or Territory and any place outside thereof." 21 U.S.C. § 321(b)(1).

## C. Controlled Substances Act

18. Except in limited circumstances, it is unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. 21 U.S.C. § 841(a)(1).

## IV. FACTS ESTABLISHING PROBABLE CAUSE

### A. Receipt of Information from Medical Board of California

19. I first became familiar with China House Clinic and Edward FENG in November of 2010, after speaking with Investigator Douglas Becker, Medical Board of California, Enforcement Program. Investigator Becker told me that on or about December 16, 2009, the Medical Board of California (hereinafter "MBC") received a complaint from Kathleen Millikin of Watsonville, California. Millikin stated that her 24-year old son, Nicholas Eckel, was diagnosed with and treated for testicular cancer at the University of California at San Francisco (UCSF) Comprehensive Cancer Center. After some time, Eckel told Millikin he wanted to seek alternative treatment. Millikin stated a friend referred them to Edward FENG, a "foot acupresurist" in San Francisco.

20. On April 1, 2009, Millikin took Eckel to FENG. During the first meeting, FENG told Millikin and Eckel he could cure Eckel's cancer. FENG also told Millikin and Eckel that if they returned to Western medicine, FENG would no longer treat Eckel. Eckel sought daily treatment from FENG from April 2009 through June 2009. According to Millikin's complaint, the treatment consisted of FENG applying "metal probes that were jammed into Nicholas' (Eckel's) foot and that caused so much pain Nicholas (Eckel) could almost not walk after

7

treatment." Millikin also stated in the complaint that FENG "told Nicholas (Eckel) he had to become a Vegan and made him take a variety of strange pills." Millikin reported that by the end of June, 2009, Eckel agreed to return to UCSF Comprehensive Cancer Center where Eckel learned his cancer had progressed.

21. On July 16, 2010, Investigator Becker interviewed Millikin, who stated that in May 2009, during a flu epidemic (possibly referring to the 2009 H1N1 influenza scare), FENG gave Millikin some vials containing small tablets. FENG told Millikin to place four to eight tablets under her tongue if she felt sick. FENG told Millikin he brought the tablets from China. Millikin felt ill several days later and took four of FENG's tablets. Shortly after taking the tablets, Millikin developed an ear ache. Approximately 24 hours later, Millikin's hands swelled and became painful. Millikin reported that her hands blistered and the skin on the back of her hands began to peel off. Millikin's hands were swollen for approximately one week. Millikin stated she returned to the China House Clinic and showed FENG her hands. FENG denied the tablets were the cause of her swollen hands. FENG wrote down the name of the tablets in Chinese on a piece of paper for Millikin. During the interview, Millikin turned over two vials of the tablets and the piece of paper to Investigator Becker. The vials contained no labeling or directions for use.

22. On or about July 19, 2010, Investigator Becker contacted Maggie Lee, Office Technician, MBC. Lee told Investigator Becker that she could read and write Chinese and translated FENG's writing. Lee translated the name to mean, literally, "Six God Tablet." An Internet search of "Six God Tablet" revealed the tablets are also called "Six Spirit Pills" and "Liu Shen Wan."

8

**B.     Forensic Analysis of Liu Shen Wan**

23.     On or about July 29, 2010, Investigator Becker met with Special Agent Jason Root, Food and Drug Administration, Office of Criminal Investigations (hereinafter FDA-OCI). Investigator Becker turned over the two vials obtained from Millikin to Agent Root for analysis by the FDA Forensic Chemistry Center (hereinafter FCC).

24.     On or about July 30, 2010, SA Root forwarded the two vials obtained from Millikin to the FCC for analysis.

25.     On November 1, 2010, a Case/Sample Summary Report was issued by the FCC for the Liu Shen Wan. The report states in summary that one clear vial containing small dark spheres was analyzed for the presence of active drug ingredients, specifically bufotenine and borneol, using gas-chromatography with mass spectral detection. The analysis showed the presence of bufotenine and borneol. The other clear vial containing small dark spheres was analyzed for the presence of poisons, specifically arsenic. The analysis showed the presence of arsenic.

26.     Borneol, according to the International Union of Pure and Applied Chemistry, is an organic compound. According to the Material Safety Data Sheet by Fisher Scientific, borneol may cause eye, skin, and respiratory tract irritation.

27.     Bufotenine is a Schedule I controlled substance with U.S. Drug Enforcement Administration Drug Identification Number 7403. According to Encyclopedia Britannica, bufotenine is a constituent of toad poison, the poisonous, milky secretion of glands found in the skin on the back of the animal.

28. Arsenic, according to the Center for Disease Control and Prevention, is a naturally occurring element (Ar) known to be a human carcinogen. Arsenic poisoning is known to adversely affect the dermal, gastrointestinal, neurological, and respiratory organ systems.

## C. Undercover Activities

29. On March 25, 2011, during a pre-operational briefing, Special Agent Connie Militano and I reviewed the photos maintained by the California Department of Motor Vehicles of Edward FENG and his daughter, Apple Feng.

30. On March 25, 2011, acting in an undercover capacity, Agent Militano went to the China House Clinic at **1314 Utah Street, San Francisco, California** and met with an unidentified woman. Agent Militano told the woman she wanted to purchase Liu Shen Wan for her mother. The woman told Agent Militano she could purchase Liu Shen Wan from Edward FENG. FENG met with Agent Militano and sold her five vials containing small, dark spheres. During the meeting, FENG told Agent Militano that he got the Liu Shen Wan from Shanghai. FENG also told Agent Militano that the Liu Shen Wan contained poison from a frog. FENG said, "it's poison, but this good poison." He also told Agent Militano that healthy people should not take Liu Shen Wan. FENG said, "You know it's not good for your body. But if you have problems, then you use it." FENG instructed Agent Militano to place eight to ten Liu Shen Wan pills under her tongue if she felt sick or had a sore throat. He told Agent Militano the Liu Shen Wan would make her feel better in one day. The five vials were taken as evidence and forwarded to the FDA FCC for analysis.

## D. Discussion with FDA Center for Drug Evaluation and Research

31. On May 4, 2011 Elizabeth Miller, Pharmacist, Internet and Health Fraud Team,

10

Office of Compliance, Center for Drug Evaluation and Research (CDER), FDA reviewed the FCC Case/Summary Report and statements made by FENG. CDER promotes and protects the health of Americans by assuring that all prescription and over-the-counter drugs marketed in the United States are safe and effective. Miller said based upon FENG's statements and the ingredients found in similar pills provided to Millikin, specifically bufotenine and arsenic, Liu Shen Wan is a drug as described at 21 U.S.C. §353(b).

### E. Review of Licensing Databases

32. On May 2, 2011, I reviewed the DEA's Controlled Substance Schedule at http://www.deadiversion.usdoj.gov/schedules/index.html. According to the site, bufotenine is a Schedule I drug with Drug Identification Number 7433.

33. On May 5, 2011, Anthony Guzman, Special Agent, DEA, contacted me and stated that he queried the Oracle Controlled Substances Act II database (CSA2/RICS) for "Edward FENG." CSA2/RICS is a database of licensed distributors of scheduled controlled substances. Agent Guzman stated that FENG does not have a DEA license to distribute controlled substances.

34. On May 2, 2011, I reviewed the Medical Board of California license verification website at http://www.medbd.ca.gov/lookup.html. There was no record of a medical license issued to FENG in the state of California.

35. On May 11, 2011, research was conducted into the FDA Drug Establishment Registration Database. According to this database, Edward FENG and China House Clinic were not registered as Drug Establishments as required by 21 U.S.C. § 360.

36. On May 2, 2011, research was conducted in the FDA database for all new drugs

which have been approved by FDA through the process detailed at 21 U.S.C. § 355. Liu Shen Wan, Six God Tablets, and Six Spirit Pills are not the subject of approved New Drug Applications.

37. In addition, on May 11, 2011, research was conducted into FDA Drug databases to identify whether any registered drug manufacturer had listed Liu Shen Wan, Six God Tablets, or Six Spirit Pills as a drug that they produce, as required under 21 U.S.C. § 360. According to the databases, no manufacturer had listed these products with the FDA.

### F. Probable Cause that FENG has violated the FDCA

38. Based upon the facts established during the investigation and previously described herein, there is probable cause to believe that Edward FENG, through his business China House Clinic, distributed or dispensed a product he purported to be "Chinese medicine" but that was actually a drug as defined by the FDCA at 21 U.S.C. § 321(g), in that it was intended to treat medical conditions. The pills were also prescription drugs as defined at 21 U.S.C. § 353(b)(1). The drugs were misbranded in that they were in package form and did not bear a label containing the name and place of business of the manufacturer, packer, or distributor (21 U.S.C. § 352(b)); their labeling lacked adequate directions for use (21 U.S.C. § 352(f)(1)); and they are not listed with the FDA by an FDA-registered drug manufacturer in the United States or overseas (21 U.S.C. § 352(o)). They were further misbranded while held for sale when FENG dispensed them without a prescription from a licenses practitioner. Additionally, the Liu Shen Wan pills given to Millikin by FENG were found to contain bufotenine, a Schedule I Controlled Substance and FENG did not possess a DEA license (21 U.S.C. §§ 841(a)(1)). Moreover, FENG sold the drug with the intent to defraud and mislead, claiming that it is a Chinese herbal medicine when it fact

12

it contains the controlled substance bufotenine and the toxic element arsenic. The drugs sold by FENG were transported in interstate commerce when FENG brought them into the State of California from China. Therefore, there is probable cause to believe that Edward FENG violated the FDCA by distributing adulterated and misbranded drugs in interstate commerce with the intent to defraud and mislead, in violation of 21 U.S.C. §§ 331(a), 331(d), and 331(p).

### G. Probable Cause that Evidence of Violations of the FDCA and Controlled Substances Act Will be Found at the Location to be Searched

39. As discussed above, Millikin stated that she purchased the Liu Shen Wan containing arsenic and bufotenine from FENG at Feng's Holistic Healing Center (also known as China House Clinic). Moreover, Agent Militano obtained similar pills from FENG at this same business, located at **1314 Utah Street in San Francisco, California**.

40. I have conducted surveillance of the address **1314 Utah Street in San Francisco, California**. The name "China House Clinic, Detox, Acupressure, Herbs" in white writing appears on a dark red sign above the entry door of the building located at **1314 Utah Street in San Francisco, California**.

41. On May 2, 2011, I reviewed the San Francisco County Fictitious Business Name database and found the Fictitious Business Name Filing, number 2010 0329775-00, for Feng's Holistic Healing Center located at **1314 Utah Street, San Francisco, California**. The filing was made on August 18, 2010.

42. I believe, based on the foregoing facts, that there is probable cause to believe **1314 Utah Street, San Francisco, California 94110,** is the current business location of China House Clinic and Feng's Holistic Healing Center.

43. I have learned in my more than eight years of experience as a federal agent with the US Postal Inspection Service and the FDA Office of Criminal Investigations and the numerous search warrants that I have participated in, that it is routine for individuals to keep business records, including sales records, customer lists, contracts, invoices, financial records, shipping records, and phone records, at their place of business, often for long periods of time. These records typically include bank statements, check books, debit cards, credit cards and other bank records, all of which can be of assistance in identifying financial transactions involving illicit revenue. It is also common for individuals and businesses to retain cell phones, phone books, rolodexes, notes, phone numbers and addresses, phone bills and other phone-related material, which can further help to identify Controlled Substance Act violations and violations of the FDCA, as well a customers who may have unknowingly purchased dangerous drugs from FENG.

44. I also have learned throughout my career as a federal agent that it is common for individuals involved in illegal activity to keep off-site storage locations where evidence of this illegal activity is stored. Oftentimes, contracts, receipts, keys, notes, bills, and letters of correspondence regarding the off-site storage locations will be kept in the place of business.

45. Based upon all of the above facts, I believe that there is probable cause that evidence, fruits, and instrumentalities of violations of the FDCA and Controlled Substance Act, including the above-listed categories of evidence and the items set forth in Attachment B, will be located at **1314 Utah Street, San Francisco, California 94110**, the business location of China House Clinic and Feng's Holistic Healing Center.

## VIII. CONCLUSION

46. Accordingly, based upon the evidence presented in this affidavit, including: (1) that Edward FENG dispensed "Liu Shen Wan," which is an unapproved drug, (2) that the Liu Shen Wan FENG distributed contained a controlled substance, and (3) the other evidence described herein, probable cause exists to believe that Edward FENG, through his business China House Clinic, is involved in the illegal distribution of misbranded and adulterated drugs and unapproved new drugs, with the intent to defraud and mislead, in violation of 21 U.S.C. §§ 331(a), 331(d), 331(p) and 333(a)(2), and that evidence, fruit, and instrumentalities of those violations, as described in Attachment B, will be found at **1314 Utah Street, San Francisco, California**, which premises are more particularly described in Attachment A, both of which attachments are incorporated as if fully set forth here.

47. Based on the foregoing facts and circumstances described in this affidavit, along with my training, experience, and consultations with others, there is probable cause to believe that between June 2009 and March 25, 2011, Edward FENG was knowingly involved in the Distribution in Interstate Commerce of Misbranded Drugs with the Intent to Defraud and Mislead, in violation of 21 U.S.C. §§ 331(a) and 333(a)(2), and Dispensing Prescription Drugs without a Valid Prescription with the Intent to Defraud and Misbrand, in violation of 21 U.S.C. §§ 331(k) and 333(a)(2).

48. Therefore, I respectfully request the issuance of search warrant for **1314 Utah Street, San Francisco, California**, the business location of Edward FENG and China House Clinic, and the issuance of a criminal complaint and arrest warrant for Edward FENG.

15

## IX. REQUEST FOR SEALING

49. Since this investigation is continuing, disclosure of the search and arrest warrant, the complaint, this affidavit and/or this application and the attachments thereto will jeopardize the progress of the investigation. Accordingly, I request that the Court issue an order that the search warrant, the complaint, the affidavit in support of application for the search warrant and complaint, the application for the search warrant and all attachments thereto be filed under seal until further order of this Court, with the exception that copies of these documents may be provided to employees of the United States Attorney's Office and agents of FDA-OCI for use in connection with this investigation.

I declare under penalty of perjury that the foregoing is true and correct and that this affidavit was executed at San Francisco, California, on May 23, 2011.

_____
HILARY RICKHER, Special Agent
FDA-Office of Criminal Investigations

Sworn to and subscribed in my presence this 23 day of May, 2011.

_____
~~EDWARD M. CHEN~~ JACQUELINE SCOTT CORLEY
United States Magistrate Judge
Northern District of California

16

## Attachment A
## Premises to be Searched

Based on the information contained in this affidavit, I am requesting a warrant to search the following location described as:

### 1314 Utah Street, San Francisco, CA 94110

The location to be searched is physically located at 1314 Utah Street in San Francisco, California. It is a pink building with white trim. The front door is glass with a dark brown trim. At the bottom of the door the numbers "1314" are in gold. Above the front door is a dark red sign that reads in white "China House Clinic, Detox, Accupressure, Herbs, Tel: (415) 282-1858."



## ATTACHMENT B

### Items to be Searched For, Seized, and Examined

The following records, documents, and items that constitute evidence, contraband, fruits, and/or instrumentalities of violations of 21 U.S.C. §§ 331(a), 331(d), 331(p), 333(a)(2) and 21 U.S.C §§ 841(a)(1) and (b)(1)(C):

1. Any and all misbranded and/or adulterated products, unapproved new drugs, misbranded drugs, and the packaging, labeling and containers for these items, including, but not limited to,**Liu Shen Wan, also known as Six God Tablets and Six Spirit Pills.**

2. Any and all documents relating to the research, formulation, purchase, distribution, receipt, manufacturing and administration of misbranded and/or adulterated articles (including drugs), including records reflecting the monitoring and/or testing of such products themselves from May 1, 2006 through the present.

3. Any and all import records, customs declarations, communications with suppliers of imported drugs or their raw materials from May 1, 2006 through the present.

4. Any and all customer lists, receipts and shipping documents related to the sale of misbranded and/or adulterated and/or unapproved new drugs.

5. Any and all financial records relating to China House Clinic, Feng's Holistic Healing Center, Edward Feng and/or any other entities associated with the above individual or entities from May 1, 2006 through the present.

6. Any and all records, correspondence, letters, receipts, recordings, messages and information relating to the businesses known as China House Clinic, Feng's Holistic Healing Center from May 1, 2006 through the present and relating to the manufacturing, distribution and/or sale of misbranded and/or adulterated articles, including drugs.

7. Cell phones, address books, personal calendars, daily planners, journals, itineraries, rolodex, indices and contact lists associated with China House Clinic, Feng's Holistic Healing Center, Edward Feng and/or any other entities associated with the above individual or entities.

8. Any records relating to any off-site business locations and/or off-site storage facilities, more particularly described as contacts, receipts, keys, notes, bills and any letters of correspondence, where misbranded and/or adulterated articles, including drugs, may be or have been stored, from May 1, 2006 through the present.